UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

|  |  |  |
|---|---|---|
|  | ) | |
|  | ) | |
| **DAVID MARTIN,** | ) | |
|  | ) | |
| **Petitioner,** | ) | **07 Civ. 7171 (KMK)(LMS)** |
|  | ) | |
| *- against -* | ) | |
|  | ) | **REPORT AND** |
| **ROBERT ERCOLE, Superintendent,** | ) | **RECOMMENDATION** |
| **Greenhaven Correctional Facility,** | ) | |
|  | ) | |
| **Respondent**. | ) | |

_____

TO:   THE HONORABLE KENNETH M. KARAS,
        UNITED STATES DISTRICT JUDGE

Petitioner, David Martin ("Petitioner"), proceeding *pro se*, files this petition for a Writ of

Habeas Corpus (the "Petition") pursuant to 28 U.S.C. § 2254, challenging his conviction under

Westchester County Indictment Number #01-1563 of two counts of Robbery in the Second

Degree (N.Y. Penal Law § 160.10(1) and N.Y. Penal Law § 160.10(2b)) and Resisting Arrest

(N.Y. Penal Law § 205.30).  Pet. at 1.  On October 15, 2002, Petitioner was sentenced in the

County Court of Westchester County to concurrent indeterminate terms of sixteen years to life on

the two robbery counts and to a concurrent determinate term of one year for resisting arrest.  Aff.

in Opp. to Pet. at 2; PVFH II at 19-21.[1]  Petitioner is currently incarcerated at the Eastern

Correctional Facility in Napanoch, New York.  Notice of Change of Address, Docket #10.

Petitioner seeks habeas relief on eight grounds: (1) that Petitioner was denied the right to

_____

[1]Hereinafter, "PVFH II" will refer to the transcript of the second day of the Persistent
Violent Felony Offender Hearing held on October 15, 2002; accordingly, "PVFH" will refer to
the first day of the Persistent Violent Felony Offender Hearing held on September 24, 2002.

1

a fair trial due to prosecutorial misconduct; (2) that Petitioner was denied the right to a fair trial when the court bolstered and marshaled the evidence; (3) that Petitioner's rights were violated when the hearing court precluded certain questions on cross-examination; (4) that Petitioner's due process rights were violated when the trial court refused to give an adverse inference instruction to the jury; (5) that Petitioner's due process rights were violated when the trial court improperly annotated a description of the charge on the verdict sheet; (6) that Petitioner's due process rights were violated when the court refused to grant his request for a jury for the persistent violent felony offender hearing; (7) that Petitioner's rights were violated when the trial court refused to suppress the identification testimony of a witness and that Petitioner's Sixth Amendment rights were violated when he was denied counsel during the show-up identification process; and (8) that Petitioner's rights to a fair trial and due process were violated when the People failed to disclose <u>Rosario</u> material and when the trial court curtailed cross-examination of a witness.  Pet. at 5-11, 22-25; Resp't Ex. 2 (Appellate Brief).[2]

## I.    BACKGROUND

### A.    The Crime

On the evening of October 30, 2001, at around 5:45 p.m., the victim, Victor Naar, was shopping in "The Daily Pita Factory," where he purchased a bag of groceries.  T: 45.[3]  While in the store, Naar saw Petitioner enter the store with another man, question the cashier, and then both men exited the store together.  T: 47-51.  After paying for his groceries, Naar left the store

---

[2]Petitioner has not submitted a Memorandum of Law with his habeas petition but simply describes his grounds in one paragraph for each count and, additionally, refers the court to the arguments detailed in his Appellate brief for those very same grounds.

[3]Hereinafter, "T" refers to the trial transcript.

and, while walking to his car, was approached by Petitioner's friend from the store.  Id.  The man

pointed a gun at Naar and told him to get in Naar's car.  Id.  The man, who sat in the backseat,

then ordered Naar to drive to a specific point where Naar was made to stop the car and Petitioner,

who was waiting on the street corner, got in the front passenger seat.  Id.  When Petitioner

entered the car, he was not wearing anything over his face but subsequently put on a dark mask.

T: 51-52.  Petitioner ordered Naar to drive a short distance and then told him to pull over again.

T: 52.  Petitioner then asked Naar how much money he had in his account.  T: 53.  Naar replied

that he did not have much in his account but did have some money on him.  Id.  Petitioner

demanded the money and Naar handed over approximately $650.  T: 53, 55.  When Naar handed

Petitioner the money, Petitioner was no longer wearing the mask.  T: 54.

Petitioner took the money and ordered Naar to drive onto Caryl Avenue.  T: 57.

Petitioner was still not wearing the mask at this point.  Id.  Naar ignored Petitioner's directions

and instead "slammed on the gas" and drove straight to where the police where conducting a

safety checkpoint.  T: 57, 187.  Naar put the car in park, jumped out of the car and began yelling,

"He's got a gun."  T: 57-8, 189.  Petitioner then exited the vehicle and began running north.  T:

58, 189.  The police who were manning the checkpoint chased Petitioner, never losing sight of

him, and tackled him.  T: 191, 269.  When the officers pulled Petitioner to his feet, a wad of

money fell from his front pants pocket.  T: 309.  The officers then brought Petitioner back to

where Naar was waiting, at the safety checkpoint, and Naar identified Petitioner as the man who

had entered his car by the front passenger door.  T: 80, 286-7.  A handgun was found on the floor

of the rear of Naar's car.  T: 332.  Petitioner's accomplice who had been sitting in the backseat of

the car, also fled the scene, and the police were not able to apprehend him.  T: 360.

3

B.     **Procedural History**

On January 9, 2002, Petitioner was indicted in Westchester County, Indictment #01-1563, for one count of Robbery in the Second Degree/aided by another person actually present (N.Y. Penal Law § 160.10(1)), one count of Robbery in the Second Degree/displays a firearm (N.Y. Penal Law § 160.10(2b)), one count of Robbery in the Second Degree/theft of a motor vehicle (N.Y. Penal Law § 160.10(3)), one count of Criminal Use of a Firearm in the Second Degree (N.Y. Penal Law § 265.08(2)), Resisting Arrest (N.Y. Penal Law § 205.30), Criminal Possession of Stolen Property in the Fifth Degree (N.Y. Penal Law § 165.40), and Unlawful Imprisonment in the Second Degree (N.Y. Penal Law § 135.05).  Resp't Ex. 1 (Indictment).[4]  In an omnibus motion, Petitioner's counsel sought to suppress an in-court identification by Naar.  Resp't Ex. 8 (Omnibus Motion).  The People opposed the motion and the court held a Wade hearing to determine whether the identification process used by the People was unduly suggestive.[5]  Resp't Ex. 9 (People's opposition); Resp't Ex. 10 (Decision and Order Granting Hearing).  At the Wade hearing, Naar testified regarding his ability to identify Petitioner as the front seat robber, detailing the numerous other times outside of the show-up identification procedure that he had seen Petitioner's face.  H: 11-76.[6]  By Decision and Order, the court ruled that the identification procedure used by the People was not unduly suggestive and that, because Naar had four or five

---

[4]The People only submitted three of these counts to the jury for consideration during deliberations: Robbery in the Second Degree/aided by another person actually present, Robbery in the Second Degree/displays a firearm, and Resisting Arrest. T: 516-21.

[5]The purpose of a Wade hearing is to determine before trial whether pretrial identification procedures have been so improperly suggestive as to taint an in-court identification. See United States v. Wade, 388 U.S. 218 (1967).

[6]Hereinafter, "H" refers to the transcript of the Wade hearing held on May 3, 2002.

4

opportunities to view the Petitioner during the crime, Naar had an "independent source" for his identification of Petitioner. H: 107-8.

A jury trial of several days was held where Petitioner did not testify or put on any defense. T: 1-554. Petitioner was found guilty of Robbery in the Second Degree/aided by another person actually present (N.Y. Penal Law § 160.10(1)), Robbery in the Second Degree/displays a firearm (N.Y. Penal Law § 160.10(2b)), and Resisting Arrest (N.Y. Penal Law § 205.30). T: 550-1. On September 24, 2002, and October 15, 2002, a hearing was held to determine if Petitioner should be sentenced as a Persistent Violent Felony Offender. See generally PVFH and PVFH II. At this hearing, Petitioner's counsel requested that a jury be empaneled to hear the question of Petitioner's guilt on his previous convictions since he disputed that he was actually guilty of those crimes. PVFH: 8-14. The court rejected this request and ultimately sentenced Petitioner as a Persistent Violent Felony Offender to concurrent indeterminate terms of sixteen years to life on the two robbery counts and to a concurrent determinate term of one year for resisting arrest. Id.; PVFH II: 19-21.

On March 18, 2004, Petitioner's counsel filed a direct appeal to the New York State Supreme Court of the Appellate Division, Second Department, alleging the first six grounds raised in this habeas petition. Resp't Ex. 2 (Appellate Brief). Petitioner then filed a supplemental brief, *pro se*, alleging the final two counts raised in this habeas petition. Resp't Ex. 4 (*Pro Se* Supp. App. Brief). By Decision and Order, the Appellate Division affirmed Petitioner's conviction, stating specifically that there was an "independent basis for the victim's in-court identification" and that the "procedure pursuant to which [Petitioner] was sentenced as a persistent felony offender did not violate his constitutional rights." People v. Martin, 24 A.D.3d

5

470 (2d Dept. 2005).  Additionally, the court held that Petitioner's remaining claims were "not

preserved for appellate review, do not require reversal, or are without merit."  Id.  Petitioner then

sought leave to appeal to the New York State Court of Appeals, which was denied on April 11,

2006.  People v. Martin, 6 N.Y.3d 850 (2006).  On July 10, 2007, Petitioner timely filed this

petition for a Writ of Habeas Corpus and he has no other appeals or petitions pending.  Pet. at 14.


## II.    DISCUSSION

### A.    Standard of Review

"Habeas review is an extraordinary remedy."  Bousley v. United States, 523 U.S. 614,

621 (1998) (citing Reed v. Farley, 512 U.S. 339, 354 (1994)).  To be granted a writ of habeas

corpus from a federal district court, a petitioner must fully and carefully comply with the

provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C.

§ 2254.  Under the AEDPA, all state remedies must be exhausted before a federal court may

consider a state prisoner's petition for a writ of habeas corpus.  28 U.S.C. § 2254(b)(1)(A); see

also Picard v. Connor, 404 U.S. 270, 275 (1971).  In the interests of comity and expeditious

federal review, "[s]tates should have the first opportunity to address and correct alleged

violations of [a] state prisoner's federal rights."  See Coleman v. Thompson, 501 U.S. 722, 731

(1991); see also Daye v. Attorney General of the State of New York, 696 F.2d 186, 190-91 (2d

Cir. 1982).  The exhaustion requirement of the federal habeas corpus statute is set forth in 28

U.S.C. § 2254(b), (c):

> (b) An application for a writ of habeas corpus in behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted unless it appears that
> the applicant has exhausted the remedies available in the courts of the State, or that

6

there is either an absence of available State corrective process or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner.

(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

28 U.S.C. § 2254(b), (c).

The Second Circuit has adopted a two-stage inquiry to determine whether the exhaustion doctrine has been satisfied.  See Klein v. Harris, 667 F.2d 274, 282 (1981).  First, the petitioner must have "fairly presented" his or her federal constitutional claim to the appropriate state courts. Picard v. Connor, 404 U.S. at 275-76.  "A claim has been 'fairly presented' if the state courts are apprised of 'both the factual and the legal premises of the claim [the petitioner] asserts in federal court.' "  Jones v. Vacco, 126 F.3d 408, 413 (2d Cir. 1997) (quoting Daye, 696 F.2d at 191).  In other words, the claim must have been presented in a way that is "likely to alert the court to [its] federal nature."  Daye, 696 F.2d at 192.  The fair presentation requirement is satisfied if the state court brief contains phrases, such as "under the Due Process Clause" or "under the Constitution," that point to the petitioner's reliance on the United States Constitution as his or her legal basis for relief.  Klein, 667 F.2d at 282 (internal citations omitted).  A claim may be considered "presented" even if the federal grounds were not explicitly asserted before the state courts if the petitioner, in asserting his or her claim before the state court, did one of the following: (1) relied on pertinent federal cases that employ constitutional analysis, (2) relied on pertinent state cases that apply constitutional analysis in like fact situations, (3) asserted his or her claim in terms so particular as to call to mind specific constitutionally-protected rights; or (4) alleged a fact pattern that falls within the mainstream of constitutional litigation.  See Daye, 696 F.2d at 186; Irving v.

7

Reid, 624 F. Supp. 787, 789 (S.D.N.Y. 1985).

Second, having fairly presented his or her federal constitutional claim to the appropriate state court and having been denied relief, the petitioner must appeal his or her conviction to the highest state court.  Klein, 667 F.2d at 282.  Where a petitioner fails to present his or her federal constitutional claim to the highest state court, the claim cannot be considered exhausted.  Id. (citing Williams v. Greco, 442 F. Supp. 831, 833 (S.D.N.Y.1977)).  There is, however, another avenue available for exhaustion purposes.  A petitioner who has failed to exhaust state remedies by pursuing a direct appeal may satisfy the exhaustion requirement by utilizing available state methods for collaterally attacking his or her state conviction.  See Klein, 667 F.2d at 282; see also Johnson v. Metz, 609 F.2d 1052, 1055-56 (2d Cir. 1979) (instructing habeas petitioner who did not fairly present claim in the course of his direct appeals in New York state courts to proceed by filing a motion to vacate judgment pursuant to N.Y. Crim. Proc. Law § 440.10).  If collateral relief is denied, the petitioner may satisfy the exhaustion requirement by employing the state appellate procedures available for review of such denial.  Id. at 282-83.

Generally, a state prisoner has one year from the date his or her conviction becomes final to file a habeas petition in federal court.  28 U.S.C. § 2244(d)(1).  This limitations period ordinarily begins to run on "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review."  28 U.S.C. § 2244(d)(1)(A).  The limitations period is tolled while ". . . a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending . . . ."  28 U.S.C. § 2244(d)(2).  The limitations period may also be equitably tolled if a petitioner can show that "extraordinary circumstances prevented him [or her] from filing his [or her] petition on

time." Smith v. McGinnis, 208 F.3d 13, 17 (2d Cir. 2000).  After a petitioner has met these threshold requirements, a federal district court generally may hear "an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court" only if the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).

      **B.**    **Petitioner's Claims**

          **1.**   *__Petitioner's right to a fair trial was not violated by comments made by the prosecutor during summation.__*

Petitioner claims that his right to a fair trial was violated when, during summation, the prosecutor stated that Petitioner's lawyer could not stand up and say "You are right, they got him, caught red-handed."  Pet. at 5.  Petitioner asserts that the prosecutor was implying that Petitioner's counsel did not believe in Petitioner's innocence but could not say so because counsel was required to defend Petitioner.  Pet. at 5; Resp't Ex. 2 (Appellate Brief) at 9-10.  Respondent contends that this one isolated remark does not qualify as prosecutorial misconduct because it was in response to Petitioner's counsel's summation and, nonetheless, did not infect the trial with unfairness.  Resp't Mem. of Law at 1-2.

Habeas review of a claim of prosecutorial misconduct is "the narrow one of due process." Donnelly v. DeChristoforo, 416 U.S. 637, 642 (1974).  Therefore, in order for the alleged misconduct of a prosecutor to rise to the level of a constitutional violation, it must "so infect[] the trial with unfairness as to make the resulting conviction a denial of due process."  Id. at 643; see also Darden v. Wainwright, 477 U.S. 168, 181 (1986).

"Remarks of the prosecutor in summation do not amount to a denial of due process unless

they constitute 'egregious misconduct.' " United States v. Elias, 285 F.3d 183, 190 (2d Cir. 2002)(quoting Donnelly, 416 U.S. at 647).  "Prosecutorial misconduct during summation is grounds for reversal only when the remarks cause 'substantial prejudice' to the defendant." Gonzalez v. Sullivan, 934 F.2d 419, 424 (2d Cir. 1991)(quoting United States v. Tutino, 883 F.2d 1125, 1136 (2d Cir. 1989).  The Second Circuit has created a three part test to determine whether prosecutorial misconduct caused substantial prejudice.  The test requires courts to assess "the severity of the misconduct, the measures adopted to cure the misconduct, and the certainty of conviction absent the misconduct."  Elias, 285 F.3d at 190; see also United States v. Modica, 663 F.2d 1173, 1181 (2d Cir. 1981).

Under the Second Circuit's test, the prosecutor's comment that is at issue in this case was not severe enough to infect the entire trial with unfairness.  Defense counsel had, in her summation, attacked the credibility of the police and Naar, implied that they both were lying about the crime, and accused the police of releasing the car so that defense counsel could not have it swept for fingerprints.  T: 416, 420, 445-7, 453.  When the prosecutor, in her summation, questioned why defense counsel had presented no affirmative evidence in favor of her client but merely attacked the prosecution, the prosecutor stated, "That's all she's got...That is all there is here.  She can't get up and say, 'You know what, I thought, *yeah, you are right, they got him, caught red-handed*.' "(emphasis added)  T: 459.  Taken in its proper context, the phrase at issue was one part of a response by the prosecutor to defense counsel's strategy of attacking the prosecution's evidence and did not infect the trial with unfairness.  See also Farrington v. Senkowski, 214 F.3d 237, 245 n.2 (2d Cir. 2000)(where comments made by prosecutor in closing argument "were made in response to the defense['s] strategy" and did not support federal habeas

relief based on prosecutorial misconduct).

Additionally, in determining if a comment infected the trial with unfairness, "prosecutorial misconduct must be assessed 'in the context of the entire trial.' " Miranda v. Bennett, 322 F.3d 171, 180 (2d Cir. 2003)(quoting Donnelly, 416 U.S. at 639). Courts are to take into account "if the misconduct is an aberration in an otherwise fair proceeding." Elias, 285 F.3d at 191. See e.g. United States v. Melendez, 57 F.3d 238, 241 (2d Cir. 1995)("Most of the cases in which we have reversed convictions as a result of prosecutorial misconduct have involved repeated improper statements whose aggregate effect was more likely to undermine the fairness of the trial"); United States v. Biasucci, 786 F.2d 504, 514 (2d Cir. 1986)("Although the prosecutor's disparaging remarks about defense counsel certainly were improper and have no place in any court, they were inconsequential, isolated aberrations in a lengthy trial"). In this case, the nine-word remark that Petitioner complains of is the only instance that he points to of prosecutorial misconduct in a trial where the transcript comprises 554 pages. Even if it was improper, the phrase is hardly severe enough to infect the entire trial with unfairness.

The second prong of the Second Circuit's test requires the court to assess the measures that the trial court took to cure the misconduct. At the time the remark was made, defense counsel did object and the court instructed the prosecutor to move on, which she did. T: 459-60. Thus, the court did address the comment and the prosecutor was not allowed to continue on this path with her summation. Finally, the third prong requires the court to look at the certainty of conviction absent the misconduct. In this case, the evidence against Petitioner was overwhelming. Naar had several opportunities to see Petitioner's face over a period of time, thus he had significant support for his identification of Petitioner. T: 47-8, 51, 54. Furthermore, the

11

police who apprehended Petitioner never lost sight of him during the chase.  T: 191, 269.  With

no contrary evidence presented by Petitioner at trial, one must conclude that there would have

been a conviction based on this evidence alone and absent the misconduct.  Therefore,

Petitioner's first claim must be dismissed.

### 2. *Petitioner's right to a fair trial was not violated by alleged bolstering and marshaling of evidence by the court.*

Petitioner claims that his right to a fair trial was violated when the trial court bolstered

and marshaled evidence.  Pet. at 6-7; Resp't Ex. 2 (Appellate Brief) at 11-2.  Respondent argues

that the court's comments do not rise to the level of a constitutional violation and, in the

alternative, that Petitioner's claim is meritless.  Resp't Mem. of Law at 8-17.

Initially, Petitioner refers to his Appellate Brief for the argument in support of his second

claim.  It appears to this court that the argument contained in the Appellate Brief is, as

Respondent contends, that the trial court violated a state law (C.P.L. § 300.10(2)) and Petitioner

cites only to New York State case law to support this argument.  "Federal habeas relief 'does not

lie for errors of state law.' "  McCall v. Artus, No. 06 CV 3365 (SAS), 2008 WL 4501834 at *8

(S.D.N.Y. Sept. 29, 2008) (quoting Estelle v. McGuire, 502 U.S. 62, 67 (1991)).[7]  In other words,

". . .a federal habeas court is limited to deciding whether a conviction violated the Constitution,

laws or treaties of the United States."  Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).  Therefore,

for Petitioner to sustain his cause of action, he must show that any error of state law – such as

violating NY C.P.L § 300.10(2) – " 'render[ed] petitioner's state trial fundamentally unfair' and

---

[7]In the spirit of Local Civil Rule 7.1(c), copies of the opinions with WestLaw cites are attached to the copy of this Report and Recommendation which is sent to Petitioner.

thus violated his [or her] constitutional due process rights." Herring v. Meachum, 11 F.3d 374, 377 (2d Cir.1993)(quoting Tribbitt v. Wainwright, 540 F.2d 840 (5th Cir. 1976).

"[T]he floor established by the Due Process Clause clearly requires a 'fair trial in a fair tribunal' before a judge with no actual bias against the defendant or interest in the outcome of his [or her] particular case." Bracy v. Gramely, 520 U.S. 899, 904 (1997)(quoting Withrow v. Larkin, 421 U.S. 35, 46 (1975). Nonetheless, "[a] trial judge's intervention in the conduct of a criminal trial would have to reach a significant extent and be adverse to the defendant to a substantial degree before the risk of either impaired functioning of the jury or lack of the appearance of a neutral judge conducting a fair trial exceeded constitutional limits." Daye v. Attorney General of the State of New York, 712 F.2d 1566, 1572 (1983). "Further, it is abundantly clear that only infrequently does intervention by a trial judge rise to the level of a due process violation." Gayle v. Scully, 779 F.2d 802, 806 (1985). "Thus, a petitioner claiming that a judge's bias deprived him [or her] of a fair trial faces a difficult task." Id.

Petitioner has not met this burden in this case. Petitioner's claim centers around two comments made by the trial judge. The first comment occurred during an exchange with defense counsel during cross-examination of Naar. Defense counsel made a pronouncement to the jury that "with regard to the man in the front passenger seat...he is not on trial." T: 142. The judge responded that "The man in the front passenger seat is on trial, and your client is on trial for that particular role." Id. Defense counsel took issue with the judge's characterization of this fact, objecting that the jury would infer from this comment that the judge believed that Petitioner was, indeed, the man in the front passenger seat, and requested a mistrial. Id. The judge responded, "That is not what the Court said. The Court said your client is on trial for allegedly being the

13

man in the front passenger seat, and I do believe that is a correct statement." Id. The second

comment that Petitioner contends was biased was included in the charge to the jury.  In

explaining the burden of proof to the jury, the trial judge stated that:

> As you know, the People contend in this case that [Petitioner]
> acted in concert with a person who is not here on trial.  You must
> not speculate on the present status of that other person.  You must
> not draw any inference from his absence, and you must not allow
> his absence to influence your verdict.

T: 508.  Defense counsel did not object to this section of the charge at the time it was given but

later raised it in the Appellate Brief.  Resp't Ex. 2 (Appellate Brief) at 11-2.  It appears that

defense counsel's strategy was to deny that her client was the front seat robber, even though the

victim and several law enforcement officers had identified him as such.   T: 47-8, 51, 54, 191,

269.  Defense counsel argued in the Appellate Brief that this charge implied that the judge

believed that Petitioner was the man in the front seat.  Resp't Ex. 2 (Appellate Brief) at 12.

Neither of these comments by the trial judge rises to a level that would be so adverse to

Petitioner that it rendered the trial fundamentally unfair and, therefore, a violation of due process.

In both instances, the judge was making clear to the jury that Petitioner was on trial for allegedly

being the front seat robber.  This was an issue presented in the proceeding, and was not a biased

comment that the judge believed, in his opinion, that Petitioner was, in fact, the front seat robber,

or that Petitioner was guilty of any of the crimes charged.  "A trial judge in [a] criminal

case...should take part where necessary to clarify testimony and assist the jury in understanding

the evidence."  United States v. De Sisto, 289 F.2d 833, 834 (2d Cir. 1961).  In comparison, the

Second Circuit refused to find bias by a trial judge who, in the court's own words, "strayed a

considerable distance from the model of a neutral magistrate" and whose "interventions in the

14

trial were far more extensive than what is normally appropriate for a trial judge." Johnson v.

Scully, 727 F.2d 222, 227 (2d Cir. 1984). In Johnson, the court further found that the judge

presented "an unbalanced summary of the prosecution and defense" and engaged in "sharp

exchanges between [himself] and defense counsel, with defense counsel frequently rebuked in

the presence of the jury." Id. at 226. Still, the court held that "the trial judge's conduct did not

exceed constitutional standards." Id. Petitioner's claim does not even rise to this level and,

therefore, must be dismissed.

> **3.** ***Petitioner's constitutional rights were not violated when the hearing***
> ***court precluded certain questions on cross-examination.***

Petitioner claims that his constitutional rights were violated when the trial court curtailed

defense counsel's cross-examination of the victim during the pre-trial Wade hearing. Pet. at 3;

Resp't Ex. 2 (Appellate Brief) at 12-13. Respondent contends that the court's limitation on

defense counsel's cross-examination was not a violation of clearly established federal law and,

even if it had been in error, the error was harmless. Resp't Mem. of Law at 15-17.

A defendant's right to cross-examination is established by the Sixth Amendment and

fully supported by Supreme Court precedent. ("In all criminal prosecutions, the accused shall

enjoy the right to...be confronted with the witnesses against him...." U.S. Const. amend. VI.)

"The main and essential purpose of confrontation is to secure for the opponent the opportunity of

cross-examination." Davis v. Alaska, 415 U.S. 308, 315 (1974). "The right of cross-

examination, though not absolute, is one of the most firmly established principles under Supreme

Court law." Cotto v. Herbert, 331 F.3d 217, 248 (2d Cir. 2003). However, that right is subject to

certain limitations that fall within the discretion of the trial judge. "[T]rial judges retain wide

latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." Delaware v. Van Arsdall, 475 U.S. 673, 679 (1980). The right to cross- examination has been extended to pre-trial hearings as well as trial proceedings. See U.S. v. Salerno, 631 F. Supp. 1364, 1373 (S.D.N.Y. 1986).

The Supreme Court has further held that "a criminal defendant states a violation of the Confrontation Clause by showing that he [or she] was prohibited from engaging in otherwise appropriate cross-examination...[that would] expose to the jury the facts from which jurors...could appropriately draw inferences relating to the reliability of the witness." Id. at 680. Any such violation of the Confrontation Clause is "subject to harmless error analysis." Id. at 684. Additionally, when such a claim is made in a habeas petition where the matter was adjudicated on the merits in the state court below, the petitioner must show that the state court decision either "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law...or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

Limitations on cross-examination which are raised in habeas petitions have been found not to violate the Confrontation Clause where the statements intended to be elicited were neither probative nor relevant (Fuller v. Gorczyk, 273 F.3d 212 (2d Cir. 2001)); where such cross-examination of a police witness would have led to potentially misleading hearsay (Buie v. Phillips, 298 Fed. Appx. 63 (2d Cir. 2008)); where the trial court limited questioning in light of

the extensiveness of the testimony already elicited on cross-examination (Glisson v. Mantello, 287 F. Supp. 2d 414 (S.D.N.Y. 2003)); and where cross-examination would have probed matters deemed collateral (United States v. Crowley, 318 F.3d 401 (2d Cir. 2003)).

In this case, Petitioner has not met his burden of proving that the state court decision was in violation of clearly established federal law.  Petitioner's claim revolves around the court's decision to curtail questioning of the victim during the pre-trial Wade hearing.  Defense counsel's questions were limited by the court when probing exactly where the victim stood during the show-up identification procedure and whether the police were holding a wad of money during the show-up identification procedure.  H: 60-2, 70-6, 80-3.  Otherwise, this was the only limitation during 112 pages of testimony regarding the identification procedure used by the police.  In the end, the court ruled that the show-up identification procedure employed by the police at the scene was not impermissibly suggestive and, even if it was, there were other independent sources of identification to which the victim could refer.  H: 105-8.  Therefore, defense counsel's motion to suppress the pre-trial identification by Naar at trial was denied.  Id. The court ruled in both instances that continuing cross-examination would be of "negligible" benefit or would delve into matters that were irrelevant.  H: 61, 82-3.  These are proper reasons to curtail cross-examination and thus, the hearing court's limitations were not in violation of clearly established federal law.

Even if such curtailment of cross-examination did rise to the level of a constitutional violation, the error was harmless in light of the weight of the other evidence presented.  It was established during the Wade hearing as well as at trial that the victim had ample opportunity to view Petitioner at other moments besides during the show-up identification procedure.  H: 105-8;

17

T: 47-8, 51, 54.  The Appellate Division subsequently affirmed the trial court's holding, stating, that "[t]he record fully supports the hearing court's determination that there was an independent basis for the victim's in-court identification of the defendant."  Resp't Ex. 6 (Decision and Order) at 1.  The Appellate Division went on to say that "any purported error in the admission of the relevant testimony was harmless beyond a reasonable doubt in light of the overwhelming evidence of the defendant's guilt."  Id.  Thus, any error in allowing the pre-trial identification to be admitted at trial was harmless in light of the testimony of both the victim and law enforcement officials.  Petitioner's third claim must be dismissed.

    4.    ***Petitioner's due process rights were not violated when the court refused to give an adverse inference charge.***

Petitioner asserts in his fourth claim that his due process rights were violated when the court refused to give an adverse inference charge to the jury based on the People's failure to comply with N.Y. Penal Law § 450.10 which requires that notice be given to a defendant before stolen property is returned to the victim.  Pet. at 10; Resp't Ex. 2 (Appellate Brief) at 14-5.  Respondent contends that, although the People did fail to comply with this statute, such a violation of state law does not rise to the level of a constitutional violation and is, therefore, not reviewable in a petition for a writ of habeas corpus.  Resp't Mem. of Law at 18-26.

The law on this point was discussed in Petitioner's second claim, supra, but will be reiterated here again.  "Federal habeas relief 'does not lie for errors of state law.' "  McCall v. Artus, No. 06 CV 3365 (SAS), 2008 WL 4501834 at *8 (S.D.N.Y. Sept. 29, 2008) (quoting Estelle v. McGuire, 502 U.S. 62, 67 (1991)).  See also  Pulley v. Harris, 465 U.S. 37, 41 (1984) ("A federal court may not issue the writ on the basis of a perceived error of state law.")  In other

words, ". . .a federal habeas court is limited to deciding whether a conviction violated the Constitution, laws or treaties of the United States." Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).  Therefore, for Petitioner to sustain his cause of action, he must show that any error of state law – such as the refusal to give an adverse inference instruction –  " 'render[ed] petitioner's state trial fundamentally unfair' and thus violated his [or her] constitutional due process rights."  Herring v. Meachum, 11 F.3d 374, 377 (2d Cir.1993) (quoting Tribbitt v. Wainwright, 540 F.2d 840 (5th Cir. 1976).

The decision of whether or not to issue an adverse inference instruction is solely a matter of discretion for the trial judge under New York law.  See People v. Rice, 39 A.D.3d 567, 568 (2nd Dept. 2007)("The court did not improvidently exercise its discretion in denying the defendant's request for an adverse inference charge"); Allain v. Les Industries Portes Mackie, Inc., 16 A.D.3d 863, 864 (3rd Dept. 2005)("Indeed, the issue of spoliation of evidence is within the trial court's purview...[therefore,] the adverse inference instruction given to the jury was an appropriate remedy and the court did not abuse its discretion").  Because this is an evidentiary ruling made by the trial court based on state law, a federal court cannot review the matter in a habeas petition.

However, Petitioner could show a violation of due process if the issue in question – here, the failure to give an adverse inference charge – created "actual prejudice result[ing] from the events as they unfolded during the [] trial."  Herring, 11 F.3d at 378.  Petitioner has not attempted to show that any actual prejudice resulted from the court's refusal to give an adverse inference charge.  In fact, defense counsel had already entered into a stipulation with the People that sanctioned the People by precluding them from mentioning the fingerprint evidence at trial

because of their failure to follow N.Y. Penal Law § 450.10.  This was the agreement that defense counsel made regarding her objections to the People's actions and it would have been prejudicial to the People for the court to then give an adverse inference instruction after this agreement had been struck.  Even if an adverse inference charge had been given, this would not have caused the jury to reach a contrary result, in light of the overwhelming evidence produced by the People at trial.  Therefore, Petitioner's fourth claim must be dismissed.

### 5. *Petitioner's due process rights were not violated when the court allegedly improperly annotated the verdict sheet.*

Petitioner asserts that his due process rights were violated when the court improperly annotated the verdict sheet in violation of N.Y. Penal Law § 310.20(2).  Pet. at 22; Resp't Ex. 2 (Appellate Brief) at 16-7.  Petitioner claims that he was prejudiced when, in order to distinguish between the two robbery counts, the court annotated the first robbery count with the words "aided by another" and did not include the rest of the phrase "actually present."  Id.  Respondent contends that this annotation did not contradict N.Y. Penal Law § 310.20(2) and, even if it did, such an error of state law does not rise to the level of a constitutional violation.  Resp't Mem. of Law at 27-9.

Again, "[f]ederal habeas relief 'does not lie for errors of state law.' "  McCall v. Artus, No. 06 CV 3365 (SAS), 2008 WL 4501834 at *8 (S.D.N.Y. Sept. 29, 2008) (quoting Estelle v. McGuire, 502 U.S. 62, 67 (1991)).  See also  Pulley v. Harris, 465 U.S. 37, 41 (1984) ("A federal court may not issue the writ on the basis of a perceived error of state law.")  In other words, ". . .a federal habeas court is limited to deciding whether a conviction violated the Constitution, laws or treaties of the United States."  Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).  Therefore, for

Petitioner to sustain his cause of action, he must show that any error of state law – such as an improperly annotated verdict sheet –  " 'render[ed] petitioner's state trial fundamentally unfair' and thus violated his [or her] constitutional due process rights."  Herring v. Meachum, 11 F.3d 374, 377 (2d Cir.1993) (quoting Tribbitt v. Wainwright, 540 F.2d 840 (5th Cir. 1976).

N.Y. Penal Law § 310.20(2) states that "[w]henever the court submits two or  more counts charging offenses set forth in the same article of law, the court may set forth the dates, names of complainants or specific statutory language, without defining the terms, by which the counts may be distinguished."  In its submission to the jury, the court annotated the verdict sheet in Count One with the words "aided by another" and annotated Count Two with the words "displayed what appeared to be a pistol."  Resp't Ex. 13 (Verdict Sheet).  This annotation was made so that the jury could distinguish between the two robbery counts.  The statutory language of N.Y. Penal Law § 310.20(2) simply requires that the court use "specific statutory language." It does not require that those terms be defined nor does it specifically require that the entire language of the statute be included.  It merely allows the court to include an annotation in order to distinguish between similar counts.  Thus, when the trial court chose to use the phrase "aided by another" without including the following phrase of "actually present," the court did not act in violation of N.Y. Penal Law § 310.20(2).

Even if such an annotation had violated the state statute, such an error does not rise to the level of a constitutional violation.  Petitioner's trial was not rendered fundamentally unfair due to two missing words on the verdict sheet, especially in light of the overwhelming evidence of guilt presented by the People at trial.  Therefore, Petitioner's fifth claim must be dismissed.

6.       ***Petitioner's due process rights were not violated when the trial court
         denied him a jury trial to determine if he was a persistent violent felony
         offender.***

Petitioner claims that his due process rights were violated when the trial court refused to

provide him with a jury to determine whether he was, in fact, the person who had committed the

prior felonies in question.  Pet. at 22-3; Resp't Ex. 2 (Appellate Brief) at 18-9.  Respondent

contends that a jury trial is not required by law when a defendant contests his or her prior

convictions during a persistent violent felony offender hearing.  Resp't Mem. of Law at 30-2.

N.Y. Penal Law § 70.08 states that:

> A persistent violent felony offender is a person who stands
> convicted of a violent felony offense... after having previously been
> subjected to two or more predicate violent felony
> convictions....When the court has found, pursuant to the provisions
> of the criminal procedure law, that a person is a persistent violent
> felony offender, the court must impose an indeterminate sentence
> of imprisonment, the maximum term of which shall be life
> imprisonment.[8]

In other words, the court is required to enhance a defendant's sentence if he or she has been

previously convicted of two or more felonies.  The court makes this determination by holding a

persistent violent felony offender hearing.  In Apprendi v. New Jersey, 530 U.S. 466 (2000), a

defendant challenged the constitutionality of enhancing sentences based on facts that either had

not been submitted to a jury or that had been determined under a lesser burden of proof.  The

Supreme Court held that "*[o]ther than the fact of a prior conviction*, any fact that increases the

---

[8]The minimum term of imprisonment is set out in the statute based on the classification of
the current conviction.  Also note that the persistent felony offender statute, N.Y. Penal Law §
70.10, which is applied to non-violent felonies, allows the court to exercise discretion when
applying the statute, but N.Y. Penal Law § 70.08, which applies to violent felonies, does not.

22

penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt" (emphasis added). Id. at 490. Subsequently, the Southern District of New York held that "N.Y.P.L. § 70.08 is squarely within the narrow exception announced in Apprendi encompassing judicial fact-finding based solely on prior convictions." Long v. Donnelly, 335 F. Supp. 2d 450, 465 (S.D.N.Y. 2004). Analogous to this holding, the Second Circuit held that N.Y. Penal Law § 70.10, which applies to non-violent predicate felonies, "comported with the dictates of Apprendi." Brown v. Greiner, 409 F.3d 523, 534 (2d Cir. 2005). Thus, the courts have carved out a narrow exception to the Apprendi ruling that a jury is required to find facts that would enhance a defendant's sentence, and that exception is the existence of prior felony convictions.

Here, Petitioner claims that his sentence should not have been enhanced based on prior convictions and cites to the Apprendi decision to support his claim. Pet. at 22; Resp't Ex. 2 (Appellate Brief) at 18-9. In accordance with the foregoing analysis, such reliance is misplaced. However, Petitioner further contends that his situation differs from previous cases that challenged Apprendi because he contests the fact of the prior convictions. PVFH at 3-14. Specifically, Petitioner asserts in his Appellate Brief that "this case involved a finding of fact by the Judge that [Petitioner] was the person in the two convictions." Resp't Ex. 2 at 19. However, Petitioner's argument misstates the facts: the trial judge did not determine that "[Petitioner] was the person in the two convictions;" it was the jury at those trials who determined such a fact when they convicted him. Here, the trial judge merely found that two prior convictions existed. The trial judge was not making any finding of fact beyond that, and the existence of the convictions cannot be disputed. Therefore, Petitioner's assertion that by contesting his guilt of

the prior convictions he falls within an exception to the rule in Apprendi is without merit and his

sixth claim must be dismissed.

> 7.  ***Petitioner's due process rights were not violated when the hearing court
> refused to suppress the identification testimony of the victim.***

Petitioner, in his *Pro Se* Supplemental Appellate Brief and in his habeas petition,

contends that the hearing court erred when the court refused to suppress the identification

testimony of Naar, the victim, because the show-up procedure used by law enforcement was

unnecessarily suggestive.  Pet. at 23-4; Resp't Ex. 4 (*Pro Se* Supp. App. Brief) at 1-4.  Petitioner

also claims that his right to counsel was violated when he was refused counsel during the show-

up identification procedure used by law enforcement at the scene of the crime.  Pet. at 24; Resp't

Ex. 4 (*Pro Se* Supp. App. Brief) at 4-5.  Respondent argues that the trial court's and Appellate

Division's decisions that there was an independent basis for the victim's identification of

Petitioner was not contrary to federal law.  Resp't Mem. of Law at 33, 15-7.  Respondent further

argues that there is no constitutional right to counsel during a show-up identification procedure.

Id.

The Supreme Court has held that "a suggestive pre-indictment identification procedure

does not in intself intrude upon a constitutionally protected interest." Manson v. Brathwaite, 432

U.S. 98, 113 n. 13 (1977).  More specifically, "the admission of evidence of a show-up without

more does not violate due process."  Neil v. Biggers, 409 U.S. 188, 198 (1972). "Suggestive

confrontations are disapproved because they increase the likelihood of misidentification" and it is

"the likelihood of misidentification which violates a defendant's right to due process."  Id.  "The

linchpin of admissibility, therefore is...whether the identification is reliable."  Dunnigan v.

Keane, 137 F.3d 117, 128 (2d Cir. 1998).  See also Manson, 432 U.S. at 114 ("We therefore

conclude that reliability is the linchpin in determining the admissibility of identification

testimony").  To determine the reliability of a witness' identification, the Supreme Court has set

out the factors to be considered: "the opportunity of the witness to view the criminal at the time

of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the

criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of

time between the crime and the confrontation."  Neil, 409 U.S. at 199-200.

The record shows that these factors were suitably addressed.  In his testimony at the

Wade hearing, Naar detailed the numerous times that he viewed Petitioner prior to the show-up

identification.  H: 105-8; T: 47-8, 51, 54.  Furthermore, the Appellate Division affirmed the

hearing court's ruling that Naar had an independent basis for his identification of Petitioner.

Resp't Ex. 6 (Decision and Order) at 1.  Additionally, the Appellate Division held that even if the

show-up procedure was unnecessarily suggestive, admission of the identification testimony was

harmless error "in light of the overwhelming evidence of [Petitioner's] guilt."  Id.

Petitioner further argues that his right to counsel was violated when he was denied

counsel at the show-up procedure.  Constitutionally, a person's right to counsel "attaches only at

or after the time that adversary judicial proceedings have been initiated against him [or her]."

Kirby v. Illinois, 406 U.S. 682, 688 (1972).  See also Powell v. Alabama, 287 U.S. 45

(1932)(right to counsel attaches at arraignment); Coleman v. Alabama, 399 U.S. 1 (1970)(right to

counsel attaches at a preliminary hearing).  "The initiation of judicial criminal

proceedings...marks the commencement of the criminal prosecutions to which alone the explicit

guarantees of the Sixth Amendment are applicable."  Kirby, 406 U.S. at 689-90.  Specifically, the

25

<u>Kirby</u> court declined to adopt a "*per se* exclusionary rule upon testimony concerning an identification that took place long before the commencement of any prosecution whatsoever." <u>Kirby</u>, 406 U.S. at 690.

Petitioner claims that the Sixth Amendment guarantees him the right to counsel during a show-up identification procedure because this is a "critical stage" of the criminal adjudication process.  Resp't Ex. 4 (*Pro Se* Supp. App. Brief) at 4.  However, Petitioner cites no law that would support this theory, in opposition to the precedent set down in <u>Kirby</u>.  Therefore, because a show-up identification is not a procedure that demands counsel be present, Petitioner's seventh claim must be dismissed.

> **8.**     ***Petitioner's due process rights were not violated when the People did not provide Petitioner with a YPD-5 form or when defense counsel's cross examination was curtailed by the trial judge.***

Petitioner claims that his due process rights were violated when the People failed to provide him with a copy of a YPD-5 form that was given to the victim. Pet. at 24-5; Resp't Ex. 4 (*Pro Se* Supp. App. Brief) at 6-7.  Petitioner claims that this form was <u>Rosario</u> material that the People were required to turn over to him for his defense.  <u>Id</u>.  Respondent argues that this is a state law issue and, therefore, not reviewable in a habeas petition.  Resp't Mem. of Law at 35-38. Respondent also contends that the YPD-5 form was not <u>Rosario</u> material and, thus, was not required to be produced to Petitioner.  <u>Id</u>.  Petitioner further claims that his due process rights were violated when the trial court cut short defense counsel's cross-examination of Police Officer Monaco ("Monaco").  Pet. at 25; Resp't Ex. 4 (*Pro Se* Supp. App. Brief) at 7.  Respondent contends that the trial court's curtailment of defense counsel's cross-examination was proper and

did not violate Petitioner's due process rights.  Resp't Mem. of Law at 38-40.

Under New York law, defense counsel is entitled to "examine a witness' prior statement, whether or not it varies from his testimony on the stand.  As long as the statement relates to the subject matter of the witness' testimony and contains nothing that must be kept confidential, defense counsel should be allowed to determine for themselves the use to be made of it on cross-examination."  People v. Rosario, 9 N.Y. 2d 286, 289 (1961).  The holding in Rosario, however, is one of state law and, therefore, not cognizable on federal habeas review.  See Cruz v. Scully, 716 F. Supp. 766, 769 n. 5 (S.D.N.Y. 1989)("Even if Rosario were applicable to the facts of this case, Cruz could not prevail on this argument because a Rosario error is one of state law and thus not subject to review under a petition for a federal writ of habeas corpus").  What Respondent fails to note is that there is a corresponding holding under federal case law which would require this court to consider Petitioner's claim on the merits.  In Jencks v. United States, 353 U.S. 657, 668 (1957), the Supreme Court held that "the petitioner was entitled to an order directing the Government to produce for inspection all reports...touching the events and activities as to which [the witness] testified at trial."  The Court goes on to state that these "relevant statements or reports" must be "in [the Government's] possession."  Jencks, 353 U.S. at 672.  Although Petitioner does not cite to Jencks in either his habeas petition or his *Pro Se* Supplemental Appellate Brief, this court will still consider this claim on the merits as there is federal law that could support such a contention.

While the holding in Jencks requires that reports and statements by Government witnesses be produced to defense counsel for the purpose of impeachment on cross-examination, such reports and statements must be "relevant," "touching the events and activities as to which

[the witness] testified to at trial," and "in [the Government's] possession." <u>Jencks</u>, 353 U.S. at

672.  Petitioner cannot satisfy any of these requirements.  The report at issue is a standard form,

YPD-5, that is given to victims by the police and which includes the incident number and other

"helpful numbers on the back of the form."  T: 239.  It is a single page form and the police

department does not keep a duplicate copy.  T: 243.  There is nothing else written on the form.

T: 239-243.  The incident number and other phone numbers that might be helpful to the victim

are not "relevant," did not "touch on the events and activities" that this police officer was called

to testify to, and, because there was no duplicate copy made, was not "in [the Government's]

possession."  <u>Jencks</u>, 353 U.S. at 672.  Therefore, the material was not required to be turned over

to defense counsel and Petitioner's claim must be dismissed.

Petitioner then goes on to argue that the cross examination of this same witness, Officer

Monaco, was improperly curtailed by the trial court.   Pet. at 25; Resp't Ex. 4 (*Pro Se* Supp. App.

Brief) at 7.  As discussed, *supra*, in Point III, "trial judges retain wide latitude insofar as the

Confrontation Clause is concerned to impose reasonable limits on such cross-examination based

on concerns about, among other things, harassment, prejudice, confusion of the issues, the

witness' safety, or interrogation that is repetitive or only marginally relevant."  <u>Delaware v. Van

Arsdall</u>, 475 U.S. 673, 679 (1980).

Here, the trial judge allowed defense counsel nearly an hour to cross-examine the witness

before such cross-examination was curtailed.  T: 262.  The trial judge noted, out of the presence

of the jury, that he cut defense counsel short because there appeared "to be no relevant basis for

cross-examination" and "the questions seem[ed] to go nowhere over a long period of time."  <u>Id</u>.

The trial judge was within his discretion to limit such irrelevant and meandering cross-

examination under the rule laid down in <u>Van Arsdall</u> and, therefore, Petitioner's final claim must be dismissed.

## <u>CONCLUSION</u>

For the reasons stated above, I conclude, and respectfully recommend that Your Honor should conclude, that the instant habeas petition should be dismissed.  As the petition presents no questions of substance for appellate review, I conclude, and respectfully recommend, that a certificate of probable cause should not issue.  <u>Rodriguez v. Scully</u>, 905 F.2d 24 (2d Cir. 1990) (<u>per</u> <u>curiam</u>); <u>Alexander v. Harris</u>, 595 F.2d 87, 90-91 (2d Cir. 1979).  I further conclude, and respectfully recommend, that the Court should certify pursuant to 28 U.S.C. §1915(a) that an appeal from this order would not be taken in good faith.  <u>See</u> <u>Coppedge v. United States</u>, 369 U.S. 438 (1962).

## <u>NOTICE</u>

Pursuant to 28 U.S.C. § 636(b)(1), as amended, and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days, plus an additional three (3) days, pursuant to Fed. R. Civ. P. 6(e), or a total of seventeen (17) working days, <u>see</u> Fed. R. Civ. P. 6(a), from the date hereof, to file written objections to this Report and Recommendation.  Such objections, if any, shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of The Honorable Kenneth M. Karas, at the United States District Court, Southern District of New York, United States Courthouse, 300 Quarropas Street, White Plains, New York 10601, and to the chambers of the undersigned at the same courthouse.

Failure to file timely objections to this Report and Recommendation will preclude later appellate review of any order of judgment that will be entered.

Requests for extensions of time to file objections must be made to Judge Karas.


Dated: June 18, 2010
       White Plains, NY

                                   Respectfully submitted,

                                   LISA MARGARET SMITH
                                   United States Magistrate Judge
                                   Southern District of New York

A copy of the foregoing Report and Recommendation has been sent to the following:

Honorable Kenneth M. Karas, U.S.D.J.
300 Quarropas Street
White Plains, New York 10601

David Martin, 02-A-5676
Eastern Correctional Facility
P.O. Box 338
Naponach, New York 12458

John Sergi, Assistant District Attorney
Westchester County District Attorney's Office
111 Dr. Martin Luther King Jr. Blvd.
White Plains, New York 10601